THOMAS A. WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD WILLOUGHBY &
PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
e-mail: twilloughby@ffwplaw.com

Attorneys for the Chapter 11 Trustee,
Beverly N. McFarland

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| In re: | CASE NO.: 14-25820-D-11 |
|---|---|
| INTERNATIONAL MANUFACTURING GROUP, INC., | Chapter 11 |
| Debtor. | DCN:  FWP-19 |
| | Date:         March 19, 2015 |
| | Time:         10:00 a.m. |
| | Courtroom:  34 |
| | 501 I Street, 6th Floor |
| | Sacramento, CA |

**CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING SALE OF REAL PROPERTY (879 "F" STREET, WEST SACRAMENTO, CA) FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

I.     JURISDICTION.................................................................................................1

II.    RELIEF REQUESTED ....................................................................................1

III.   SUMMARY OF VALUE OF PROPOSED JOINT SALES OF  REAL
       PROPERTY AND IMG BUSINESS ...............................................................5

IV.   BACKGROUND ...............................................................................................8

      The Real Property ..........................................................................................9

      The Real Property Liabilities ........................................................................9

      Marketing Related to the Real Property ........................................................9

      The Proposed Sale ........................................................................................10

V.    BIDDING PROCEDURES.............................................................................10

VI.   LEGAL ARGUMENT IN SUPPORT OF SALE OF THE PROPERTIES ...............11

     A.    The Sale of the Real Property Pursuant to the APA Is Authorized by
           Section 363 as a Sound Exercise of the Trustee's Business Judgment ...........11

          1.    Sound Business Purpose. ...................................................................12

          2.    Fair and Reasonable Consideration. .....................................................13

          3.    Good Faith. .........................................................................................13

     B.    The Sale of the Real Property Free and Clear of Liens and Other
           Interests Is Authorized by Section 363(f)......................................................13

     C.    The Bid Procedures are Appropriate and Will Maximize the Value
           Received for the Estate. ..................................................................................16

     D.    Relief Under Bankruptcy Rule 6004(h) Is Appropriate ..................................17

VII.  NOTICE.........................................................................................................18

VIII. CONCLUSION..............................................................................................19

Motion for Order Approving
Sale of Real Property

1

**TABLE OF AUTHORITIES**

2

<u>**CASES**</u>

3

*Cello Bag Co. Inc. v Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.)*
4
   99 B.R. 124 (Bankr. N.D. Ga. 1988) ...................................................................16

5

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*
   722 F.2d 1063 (2d Cir. 1983)..........................................................................12
6

*Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*
7
   107 F.3d 558 (8th Cir. 1997)..........................................................................16

8

*Gaffney v. Rubino (In re Builders Capital & Servs. Inc.)*
   317 B.R. 603 (Bankr. W.D.N.Y. 2004) .........................................................15
9

*Gardi v. Gowan (In re Dreier, LLP)*
10
   429 B.R. 112 (Bankr. S.D.N.Y. 2010)
   *aff'd*, 2010 U.S. Dist. LEXIS 96604 (S.D.N.Y. Sept. 10, 2010) .............................15
11

*Golden Mortg. Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.)*
12
   171 B.R. 79 (B.A.P. 9th Cir. 1994)...........................................................15

13

*In re 995 Fifth Ave. Assocs., L.P.*
   96 B.R. 24 (Bankr. S.D.N.Y. 1989) ..........................................................16, 17
14

*In re American Development Corp.*
15
   95 B.R. 735 (Bankr. C.D. Cal. 1989) .........................................................12

16

*In re Bygaph, Inc.*
   56 B.R. 596 (Bankr. S.D.N.Y. 1986) ..........................................................14
17

*In re Collins*
18
   180 B.R. 447 (Bankr. E.D. Va. 1995) .........................................................15

19

*In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988) ..........................................................14

20

*In re Ewell*
   958 F.2d 275 (9th Cir. 1992)..........................................................................12
21

*In re Financial News Network, Inc.*
22
   126 B.R. 152 (Bankr. S.D.N.Y. 1991) ........................................................17

23

*In re Fruehauf Trailer Corp.*
   Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997)........................................17
24

*In re Gaylord Grain L.L.C.*
25
   306 B.R 624 (B.A.P. 8th Cir. 2004)............................................................15

26

*In re Montgomery Ward Holding Corp.*
   Case No. 97-1409 (PJW) (Bankr. D. Del. Aug 6, 1997)..........................................17
27

*In re Octagon Roofing*
28
   123 B.R. 583 (Bankr. N.D. Ill. 1991)...........................................................15

*In re Walters*
    83 B.R. 14 (B.A.P. 9th Cir. 1988) ........................................................12

*Michigan Employment Sec. Comm'n v Wolverine Radio Co. (In re Wolverine
    Radio Co.)*
    930 F.2d 1132 (6th Cir. 1991) ............................................................14

*Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In
    re Integrated Resources, Inc.)*
    147 B.R. 650 (Bankr. S.D.N.Y. 1992) ...........................................16, 17

*The Official Committee of Unsecured Creditors v The LTV Corp. (In re
    Chateaugay Corp.)*
    973 F.2d 141 (2d Cir. 1992) ................................................................12

**STATUTES**

11 U.S.C. §363 .............................................................................................passim

11 U.S.C. §544 ..................................................................................................16

11 U.S.C. §545 ..................................................................................................16

11 U.S.C. §551 ..........................................................................................2, 4, 7

28 U.S.C. §1334 .................................................................................................1

28 U.S.C. §157 ...................................................................................................1

**OTHER AUTHORITIES**

Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) .................................17

**RULES**

Federal Rule of Bankruptcy Procedure 2002 .....................................................1

Federal Rule of Bankruptcy Procedure 6004 .........................................1, 17, 18

**TREATISES**

10 A. Resnick & H. Sommer, eds., *Collier on Bankruptcy* ¶ 6004.11 (16th ed.
    2014) ................................................................................................18

1    Beverly N. McFarland, the duly-appointed and acting Chapter 11 Trustee (the "Trustee")

2  of the bankruptcy estate (the "IMG Estate") of International Manufacturing Group, Inc. ("IMG

3  or the "Debtor"), hereby moves this Court (the "Motion") for an order approving the sale of real

4  property commonly known as 879 "F" Street, West Sacramento, California, and certain personal

5  property such as intangibles directly related to the real property (collectively, the "Real

6  Property") to Ridge Capital, Inc. (the "Buyer"), subject to overbidding, pursuant to section 363 of

7  Title 11 of the United States Code (the "Bankruptcy Code").  In support of this Motion, the

8  Trustee respectfully represents the following:

9                          **I.     JURISDICTION**

10    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334,

11  Bankruptcy Code section 363, and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules")

12  2002 and 6004.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

13                        **II.     RELIEF REQUESTED**

14    The Trustee requests the following of the Court:

15    a.    Approve the sale of the Real Property to Buyer for $2,585,000 or such other

16  approved amount after competitive bidding (the "Sale Proceeds"), in accordance with the terms

17  and conditions set forth in the Asset Purchase Agreement (the "APA") attached to the Exhibit

18  Document as Exhibit A;[1]

19    b.    Approve the proposed sale of the Real Property to the successful bidder free and

20  clear of the liens, claims, and encumbrances set for in the following table (the "Table of Monetary

21  Liens") pursuant to 11 U.S.C. § 363(f), which authorizes a sale free and clear of liens if "(2) such

22  entity consents . . . (4) such interest is in bona fide dispute . . . or (5) such entity could be

23  compelled . . . to accept a money satisfaction of such interest[:]"

24  ///

---

[1] The Trustee is working diligently with the Buyer to finalize the APA before the Motion needs to be filed and served.  However, if the APA is not finalized by the time the Motion is filed and served, the Trustee will attach a copy of the signed Letter of Intent with the Buyer that provides the principal terms of the sale of the Real Property to the Buyer, file a copy of the APA with the Court once it is executed, and serve a copy on those parties receiving a copy of all papers relating to the Motion.

| Creditor Party | Estimated Amount | Subject to Potential Dispute | Proposed Disposition in Order | § 363(f) Basis |
|---|---|---|---|---|
| Unrecorded, expired lease between Wannas Enterprises, LLC ("Wannas") and IMG | None | Disputed because title merged with entry of order substantively consolidating Wannas and IMG | Provide in order that any unrecorded lease interest was terminated/eliminated by consolidation | Consent or disputed §§ 363(f)(2) or (4) |
| Zions First National Bank ("Zion") [deed of trust recorded 1/14/2004] | $1,704,707.94 (as of 2/10/2015 demand) | Investigation of potential claims against Zion in progress, but no known claims at this time; dispute exists as to amount of fees and costs | Pay agreed amount from Zion demand or pay undisputed amount and reserve any disputed amounts in blocked account with liens to attach | Consent, disputed, or pay §§ 363(f)(2), (4) or (5) |
| Fred A. Lemke and Timothy P. Mar ("Lemke/Mar") [deed of trust recorded 3/16/2004] | Unknown (original balance was $375,000) | Based on information and belief, Lemke/Mar is "net winner" and lien is subject to avoidance | Proceeds in blocked account with liens to attach to proceeds; IMG Estate may recover funds under 11 U.S.C. § 551 if lien avoided | Disputed § 363(f)(4) |
| U.S. Small Business Administration ("SBA") [deed of trust recorded 10/12/2004] | $563,724.85 (as of 2/18/2015) | No known dispute at this time | Proceeds in blocked account and paid to the extent funds are available | Consent § 363(f)(2) |
| Zion/SBA inter-creditor agreement [recorded 12/29/2004] | None Stated | With approval of sale free of Zion and SBA liens, inter-creditor agreement is moot | Provide in order that sale is free of this recorded document | Disputed or consent §§ 363(f)(2) or (4) |
| Polycomp Trust Co. custodian FBO Douglas Bertsch IRA ("Polycomp") [deed of trust recorded 5/17/2013] | $1,248,056.07 (per proof of claim no. 71 filed in Deepal W. case) | Liens given shortly before unraveling of Ponzi scheme and may be avoidable | Proceeds in blocked account and paid to the extent funds are available if liens are not avoided | Disputed or consent §§ 363(f)(2) or (4) |
| Ron and Maureen Ashley [deed of trust recorded 8/7/2013] | None Stated | Liens given shortly before unraveling of Ponzi scheme and may be avoidable | Proceeds in blocked account and paid to the extent funds are available if liens are not avoided | Disputed or consent §§ 363(f)(2) or (4) |
| City of West Sacramento [claim of lien recorded 2/20/2014] | $1,639.90 | Disputed because Trustee believes all amounts paid and nothing owed on lien | APA requires payment by Closing; to extent any fees owed, Buyer to pay with adjustment to the purchase price | Disputed or pay §§ 363(f)(4) or (5) |
| United States of America ("USA") | Forfeiture Action | Real Property already released from the forfeiture | Given release to record with sale, no reserve | Consent § 363(f)(2) |
| All parties served with Motion | Bankruptcy Case | Potential unrecorded liens or interests | See Section II(d) below | Disputed § 363(f)(4) |

c.     Authorize the sale free and clear of released deed of trust in favor of Nevada Security Bank, recorded on January 22, 2004, which appears on Trustee's Sale Guarantee dated April 30, 2014, but does not appear on the Preliminary Title Report issued by Fidelity National Title Company on December 31, 2014, attached as Exhibit C to the Exhibit Document;

d.     Authorize the sale free and clear of every unrecorded or perfected claim and ownership interest of every party served with notice of this Motion to the fullest extent authorized pursuant to the Bankruptcy Code including, but not limited to, any liens, interests, leases, licenses, tenancies, claims or encumbrances that are not properly perfected, and any statutory liens that may arise under state law based on the Debtor's insolvency proceedings or otherwise ("Unrecorded Lien(s)");

e.     If a holder of an Unrecorded Lien(s) files comments or an objection to the Motion, which asserts a lien and/or interest in the Real Property, grant replacement liens on the Sale Proceeds, if any, deposited into a blocked account (the "Blocked Funds") to the same extent validity and priority as such creditor's original Unrecorded Lien(s);

f.     Authorize the Trustee to pay all costs of sale, including closing costs, brokers' commission of 4%, and any outstanding real estate and/or other governmental liens (e.g., potential West Sacramento sewer lien), and state tax that will be owed on the sale from the Sale Proceeds;

g.     Authorize the Trustee to treat the payment of the potential West Sacramento sewer lien on title (in the amount of $1,639.90) as a reduction on the purchase price for bidding purposes;

h.     At the beginning of hearing on the Motion, adopt the bidding procedures (the "Bidding Procedures") set forth in Section V of this Motion, including the approval of a breakup fee to the Buyer of up to $25,000 (limited by actual costs incurred) as provided in the APA;

i.     Conduct an auction in Court and approve the sale of the Real Property to the highest and best bidder taking into account all factors, which bid is also approved by the Trustee in her business judgment at the hearing on this Motion;

j.     Waive any applicable state and/or federal stay of immediate enforceability of the

order approving the Motion when entered;

k.     Authorize the Trustee to disburse the Sale Proceeds to creditors, or into a blocked account with liens to attach as set forth in the following table (the "Waterfall Table"):

| Sources / Uses | Receipts / Payments | Running Total | Blocked Funds | Notes |
|---|---|---|---|---|
| Sale of Proceeds | $2,585,000 | $2,585,000 | | See APA. |
| Tenant's Rent Checks | $50,875 | $2,635,875 | | Maximus rent as of February 2015.  McFarland Declaration ¶ 12. |
| Costs & Broker | ($122,525) | $2,513,350 | | Estimated.  McFarland Declaration ¶ 28. |
| Property Taxes | ($17,247) | $2,496,103 | | Estimate from Preliminary Title Report.  Exh C. |
| Sewer Fees | $0 | $2,496,103 | | The Trustee does not believe any sewer or water fees are owed.  To the extent such fees are owed, they will be paid as requested in Section II(g), above. |
| Wannas/IMG Lease | $0 | $2,496,103 | | Consolidation merged and eliminated any possible lease between IMG and Wannas. |
| Zion | ($1,715,000) | $781,103 | $65,000 | Payoff demand as of 2/10/15 was $1,704,707.95.  The Trustee currently disputes attorneys' fees costs and late fees in demand (approx. $65,000), which sum shall be blocked with Zion lien to attach to the Blocked Funds to the same extent, validity and priority as its original lien. |
| Lemke/Mar | ($375,000) | $406,103 | $440,000 | Lemke/Mar payoff amount (estimated at $375,000 from preliminary title report) will be deposited into a blocked account.  Lemke/Mar lien will attach to the Blocked Funds to the same extent, validity and priority of as their original lien.  IMG Estate may have a claim to $375,000 deposited into blocked account pursuant to 11 U.S.C. §551 if IMG Estate successfully avoids the disputed lien. |
| SBA | ($406,103) | $0 | $440,000 | SBA owed $537,576.59 in principal and $26,158.563 in interest as of 2/18/15.  Balance of the Sale Proceeds, currently estimated to be $406,103, to be paid to the SBA on Closing.  Such amount may vary upward or downward based on the ultimate approved amount of the Blocked Funds.  To the extent the SBA lien is not paid in full, any balance due will attach to the Blocked Funds to the same extent, validity and priority as its original lien. |
| Zion/SBA inter-creditor agreement | $0 | $0 | $440,000 | Sale free and clear of SBA and Zion eliminates this agreement as a cloud on title.  Any residual rights of the Zion or the SBA against the Real Property will attach to the Blocked Funds in the same extent, validity and priority as any interest they may have had as result of this inter-creditor agreement. |

| Sources / Uses | Receipts / Payments | Running Total | Blocked Funds | Notes |
|---|---|---|---|---|
| Polycomp | $0 | $0 | $440,000 | Polycomp lien shall attach to the Blocked Funds to the same extent of validity and priority as its original lien subject to Trustee's right to move to avoid such lien. |
| Ron and Maureen Ashley | $0 | $0 | $440,000 | Ashley lien shall attach to the Blocked Funds to the same extent, validity and priority as their original lien subject to Trustee's right to move to avoid such lien. |
| USA | $0 | $0 | $440,000 | Forfeiture already released in criminal case. |

l.    Authorize adjustments to the amount of Blocked Funds and distributions to potential secured creditors in the Waterfall Table, according to proof at the sale hearing;

m.    Provide in the order approving the Motion that any payments to creditors as set forth in the final form of the Waterfall Table will be without prejudice to any claims held by the IMG Estate whether such claims are presently known or unknown, and that nothing in the order approving the Motion will have any res judicata or collateral estoppel effect with respect to the validity of such creditors entitlement to the distributions made; and

n.    Grant such other relief as is just and appropriate in circumstances of this case.

### III.    SUMMARY OF VALUE OF PROPOSED JOINT SALES OF
### REAL PROPERTY AND IMG BUSINESS

1.    Since her appointment, the Trustee has been managing the Real Property and paying for all maintenance and expenses, except taxes and insurance, which was necessary for the operations of the Debtor's dental and tattoo supply business (the "IMG Business"). The IMG Business occupies approximately two-thirds of the warehouse building with the remaining space occupied by a long-term tenant called Maximus.

2.    Concurrently with operating the IMG Business, the Trustee and her special litigation counsel have been utilizing the IMG Business location, Trustee's associates, consultant and IMG's employees to conduct an extensive investigation of claims against third parties. A majority of the files for IMG and related entities were, and many still are, stored at the IMG Business location. *See* Trustee's Six Month Status Report, attached to the Exhibit Document as Exhibit B.

3.    Early in the IMG bankruptcy case, the Trustee was contacted by potential buyers

of the IMG Business. On October 1, 2014, the Court approved the employment of Business Team to market and obtain potential buyers for the IMG Business. Dkt. No. 262.

4.    In analyzing a sale of the IMG Business, one of the major issues was whether a potential buyer would need to enter into a lease with the ultimate owner of the Real Property or perhaps even submit a bid for both the IMG Business and the Real Property.

5.    As such, the Trustee located and negotiated certain terms and a 4% commission with the real estate broker. Hank Spacone, the Chapter 11 Trustee for the consolidated individual Wannakuwatte bankruptcy estates, obtained Court approval for the employment of Jim Dennis of Colliers International to list and market the Real Property.

6.    Initially, the two trustees negotiated sale terms together and, once Wannas was substantively consolidated into the IMG Estate, the Trustee took over the negotiations respecting the potential sale of the Real Property, blending terms and conditions to coincide with the sale of the IMG Business.

7.    The Trustee is filing concurrently herewith a motion to approve a sale of the IMG Business ("Business Motion"). The Business Motion provides for a sixty (60) day free rent period during which the proposed purchaser of the IMG Business can operate the business at the Real Property location while performing an orderly transition of moving the IMG Business assets to a new location. The proposed Buyer for the Real Property has agreed in the APA to this sixty (60) day free rent period in addition to a non-disturbance agreement, which is to be drafted.

8.    The current proposed purchase price for the IMG Business is $375,000, with no liens on the assets being sold. Due to the benefit to the IMG Estate of the sale of the IMG Business and the temporary 60-day occupancy of the Real Property required by the potential buyer of the IMG Business, the marketing and sale of the Real Property and IMG Business have been kept on a parallel track.

9.    The Trustee requests that the Court conduct the auctions for these assets on a similar track, with perhaps the IMG Business auction being completed first, and then the auction for the Real Property.

10.    It is possible that the Court may need to adjourn one auction sale and deal with

the other depending on the requirements of the potential bidders for the IMG Business and/or the Real Property. Additionally, there may be bidders who want to bid on both the IMG Business and the Real Property as a unit, in which case a conditional or joint auction process may need to be considered.

11.    Though the sale of the Real Property may or may not directly produce funds for the IMG Estate, as demonstrated above in the Waterfall Table, if the Trustee's special litigation counsel successfully voids the Lemke/Mar lien, the IMG Estate could retain the estimated $375,000 of that lien pursuant to 11 U.S.C. § 551 (preservation for estate of avoided transfers). The IMG Estate could receive as much as $440,000 if all Blocked Funds are paid to the IMG Estate.

12.    The Trustee believes she has a strong objective basis to dispute the validity of the Lemke/Mar lien. First, the preliminary investigation by the Trustee's special litigation counsel indicates that Mr. Lemke and Mr. Mar are among a small number of "net winners" in the Ponzi scheme that have been identified to date based on a review of the available accounting records. In particular, the initial analysis shows that Mr. Lemke and Mr. Mar received more than $450,000 in transfers from IMG or the consolidated entities that exceed the amount of transfers that were received from Mr. Lemke and Mr. Mar. In addition, the obligation upon which the lien is based is an older obligation dating back to March of 2004 and is in the amount of $375,000. There were more than $375,000 in apparent transfers made to Mr. Lemke and Mr. Mar, which would have paid off the 2004 obligation. Finally, a review of the summary from the claims register for both the IMG estate and the Wannakuwatte estate show that neither Mr. Lemke nor Mr. Mar filed a proof of claim. This is consistent with the initial determination that they are "net winners" against whom the Trustee anticipates filing a claim for affirmative recovery of the net gain and an action to avoid the lien. McFarland Declaration ¶ 24.

13.    Finally, approving the proposed sale will eliminate the almost assured unsecured deficiency claim of the SBA should the Real Property be foreclosed by Zion.

14.    To summarize the value to the IMG Estate from approval of the Motion includes: (a) facilitating the sale of the IMG Business, which is anticipated to produce over $300,000 in net

proceeds free and clear of any liens or interests; (b) providing an estimated amount of $375,000 in funds if the Lemke/Mar avoidance action is successful, (c) potentially providing $440,000 in cash if all Blocked Funds are paid to the IMG Estate, (d) assisting in the preservation of any unknown claims against any creditors paid from the sale proceeds pursuant to Section II(k), above; and (e) providing for an orderly transition of both, the IMG Business and the Real Property asset, which ultimately cleans up one of the difficult assets to administer in this case.

### IV.    BACKGROUND[2]

15.    IMG filed a voluntary petition under chapter 11 of the Bankruptcy Code on May 30, 2014.

16.    On June 25, 2014, this Court entered its order approving the Trustee's appointment as the Chapter 11 Trustee for the IMG Estate.

17.    IMG is alleged to have been involved in a massive Ponzi scheme with IMG's sole shareholder and president, Deepal Wannakuwatte ("Wannakuwatte"), channeling in excess of $205 million in investor funds through the IMG "Wholesale" account alone, through more than 25 related entity bank accounts and 53 related entities over many years, and defrauding over one hundred and eighty-six victims of over $120 million in the process, primarily individuals, trusts, corporate entities, and possibly some financial institutions.    On November 13, 2014, Wannakuwatte was sentenced to twenty years in federal prison for this fraud.    McFarland Declaration ¶ 4.

18.    Prior to the filing of this case, Wannakuwatte entered into a plea agreement ("Plea Agreement") with the United States Attorney's Office in which he admitted to engaging in criminal activity (wire fraud) and agreed to the filing of a Chapter 11 case for himself (*see* Wannakuwatte Case No. 14-25816-D-11) and "any businesses in which the defendant has a financial interest" as well as stipulated to the appointment of a Chapter 11 Trustee.    Plea Agreement, 3:18-21, ¶ D(6).    The Court has taken judicial notice of the plea agreement. *See* Dkt. No. 87.

---

[2] The facts herein are drawn from the Declaration of Beverly N. McFarland ("McFarland Declaration"), filed herewith, and the exhibits thereto as well as the pleadings, schedules and other records filed in this case.

**The Real Property**

19.    The Real Property is a 55,000 square foot industrial/office building located at 879 "F" Street, West Sacramento, California.  The Trustee is selling the Real Property on behalf of Wannas, one of the entities substantively consolidated with the Debtor pursuant to this Court's Order Granting Chapter 11 Trustee's Motion (I) To Approve Settlement with Wannakuwatte Estates and (II) for Substantive Consolidation with Certain Non-Debtor Entities entered by this Court on February 6, 2015 (Dkt. No. 474).  McFarland Declaration ¶ 6.

20.    No formal appraisal has been performed on the Real Property in connection with this proposed sale and none is anticipated because, as discussed below, the Real Property has been marketed extensively and this is the best offer the Trustee has received.  *Id*. ¶ 7.

**The Real Property Liabilities**

21.    A Preliminary Title Report issued by Fidelity National Title Company on December 31, 2014, with respect to the Real Property is attached as Exhibit C to the Exhibit Document filed herewith.  The Preliminary Title Report details the encumbrances described above in the Table of Monetary Liens.  *Id*. ¶ 9.

22.    Zion has recorded a notice of default against the Real Property on April 30, 2014. Preliminary Title Report at page 6, Exception 12.  *Id*. ¶ 10.

23.    The Trustee is not aware of any other liens or encumbrances on the Real Property. *Id*. ¶ 11.

**Marketing Related to the Real Property**

24.    The Real Property has been extensively exposed to the market.   The Real Property was listed for sale by Colliers International CA, Inc. pursuant to an Exclusive Sale Listing Agreement approved by the Court in the Wannakuwatte case on October 9, 2014. The Real Property has been marketed by Colliers International for $2,850,000 extensively through more than 325 brokers in the greater Sacramento area, plus West Coast Colliers offices with numerous potential buyers vetted.  The present offer of $2,585,000 made by the Buyer conforms to or exceeds other similar sales in the West Sacramento area the past year and is the best offer the Trustee has received.  *Id*. ¶¶ 7 and 20.

**The Proposed Sale**

25.     Subject to the Court's approval, the Trustee intends to sell the Real Property to the Buyer pursuant to the APA attached as Exhibit A to the Exhibit Document filed with this Motion.  The terms of the APA include the following (all capitalized terms used in the summary shall refer to the defined terms in the APA unless otherwise noted):

(a)     The sale of the Real Property[3] to Buyer for $2,585,000 in accordance with the terms and conditions set forth in the APA free and clear of all liens, claims, and encumbrances.

(b)     The sale of the Real Property is to be "As is", "Where is" all cash to Seller at Closing;

(c)     The sale of the Real Property is subject to Bankruptcy Court approval, with Closing to occur within five (5) business days after the effective date of the Court's order approving the sale.

*Id.* ¶ 27.

26.     The Trustee requests approval of the sale of the Real Property free and clear of liens on the grounds set forth in the Table of Monetary Liens as well as authority to pay all costs of sale, including closing costs, brokers' commission of 4%, and any outstanding real estate and/or other governmental liens from the Sale Proceeds.

27.     The Waterfall Table demonstrates the projected distribution of the Sale Proceeds. The purchase price may or may not directly produce funds for the IMG Estate, however, the Trustee believes that with the prosecution of certain avoidance actions, there will be as much as $440,000 for the IMG Estate.

## V.     BIDDING PROCEDURES

The Trustee requests adoption of bidding procedures, summarized as follows:

(a)     the initial overbid must be at least $50,000.00 higher than the proposed $2,585,000 sales price or  at least $2,635,000 (the "Initial Overbid");

---

[3]  The term "Real Property" in this Motion is the same as the term "Transferred Assets" used in the APA.

(b)      any person or entity seeking to overbid must identify the bidder and its principals, owners, members, shareholders and connections, if any, to the bankruptcy estates of Wannakuwatte and IMG; provide evidence of the prospective buyer's source of capital or other financial ability to complete the contemplated transactions; state its ability to conform to the Patriot Act and other conditions as may be required by the title company and agree to the conformance of the terms and conditions within the APA.  The adequacy of any overbidder will be determined by the Trustee and her advisors in their sole discretion;

(c)      before being permitted to bid, any overbidder must deliver to the Trustee a deposit by cashier check payable to Beverly N. McFarland, Chapter 11 Trustee with a note on the check Re: IMG/Wannas Enterprises, LLC, in an amount equal to the Initial Overbid, and if an overbid is successful, the deposit by the successful overbidder shall be non-refundable and deposited into an escrow to be opened the next business day with Fidelity National Title Company along with adequate additional funds if the final overbid exceeds the initial cashier's check;

(d)      any overbid must be on the terms and conditions as set forth in a "Bidder APA" to be provided to a overbidder on request to the Trustee which contains substantially the same terms and conditions as the APA except that there will be no further overbidder due diligence period or breakup fee;[4]

(e)      Any outstanding real estate and/or other governmental liens (e.g., potential West Sacramento sewer lien) will be paid from the Sale Proceeds under the APA, but only the sewer lien may be treated as a reduction on the purchase price for bidding purposes; and

(f)      all due diligence and closing time periods contained in the APA shall apply to any overbid and any overbidder must agree to performance of such terms.

## VI.      LEGAL ARGUMENT IN SUPPORT OF SALE OF THE PROPERTIES

### A.      The Sale of the Real Property Pursuant to the APA Is Authorized by Section 363 as a Sound Exercise of the Trustee's Business Judgment

Section 363 of the Bankruptcy Code provides that a debtor, "[a]fter notice and a hearing,

---

[4] A copy of the Bidder APA will be filed with the Court at least seven (7) days prior to the Sale Approval Hearing.

may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, such use, sale, or lease should be authorized in the sound business judgment of the debtor. *See The Official Committee of Unsecured Creditors v The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside the ordinary course of business). In that regard, a sale of assets is appropriate if the debtor or trustee demonstrates a "sound business purpose" for the sale. *See, e.g., In re American Development Corp.*, 95 B.R. 735, 739 (Bankr. C.D. 1989); *In re Walters*, 83 B.R. 14 (B.A.P. 9th Cir. 1988).

Courts have considered a number of factors in determining whether to approve a sale of assets under section 363(b) including: (1) whether a sound business reason exists for the proposed transaction; (2) whether fair and reasonable consideration is being provided; (3) whether the transaction has been proposed and negotiated in good faith; and (4) whether adequate and reasonable notice has been provided. *See, e.g., In re Ewell*, 958 F.2d 275 (9th Cir. 1992).

## 1. <u>Sound Business Purpose.</u>

The proposed sale fits squarely within the parameters of the business judgment test. Here, the Trustee has demonstrated a sound business purpose for the proposed sale, given the circumstances, including market conditions, negative publicity of the Wannakuwatte Ponzi scheme, and the overall benefits of the sale at this time. As set forth above, the Real Property has been marketed for over four months. The present offer of $2,585,000 made by the Buyer is the best offer the Trustee has received. *See* McFarland Declaration ¶¶ 7 and 20. The Trustee projects that the IMG Estate may receive between $290,000 and $350,000 from the proceeds of the sale.

As described above in Section III, the sale will (1) facilitate the sale of the IMG Business, (2) provide an estimated amount of $350,000 in funds that may be available for the IMG Estate if the projected avoidance actions are successful, (3) potentially provide $290,000 cash to the IMG Estate after payment to the SBA if junior liens are avoided, and (4) will provide for an orderly

transition of the IMG Business and the Real Property asset, which ultimately cleans up one of the difficult assets to administer in this case.

Based on the foregoing, the Trustee concludes that the proposed sale of the Real Property to the Buyer is in the best interests of the IMG Estate and the Trustee's negotiation of the APA is a reasonable exercise of her business judgment.

       **2.**      **Fair and Reasonable Consideration**.

The Trustee also believes that the sale should be approved because fair and reasonable consideration is being provided.  The Buyer is purchasing the Real Property for $2,585,000, subject to overbidding.  As explained above, the Real Property has been extensively marketed by the broker and the sales price is a reasonable offer for the Real Property by a buyer which is an experienced owner of similar type properties.

       **3.**      **Good Faith.**

As set forth in the McFarland Declaration, the APA was negotiated in order to obtain a feasible and beneficial sale of Real Property.  The Real Property has been listed and offered for sale to the public for over four months.  The APA is the result of good faith bargaining by the Trustee and the Buyer to maximize value from the Real Property for the IMG Estate.

**B.**    **The Sale of the Real Property Free and Clear of Liens and Other Interests Is Authorized by Section 363(f)**

The Trustee requests that the sale and transfer of the Real Property be made free and clear of any claims or interests that may be held or asserted against the Real Property.  The Trustee submits that it is appropriate to sell the Real Property free and clear of liens pursuant to Section 363(f) of the Bankruptcy Code, with any such liens attaching to the net sale proceeds of the Real Property to the extent applicable.  Section 363(f) of the Bankruptcy Code authorizes a debtor or trustee to sell assets free and clear of liens, claims, interest, and encumbrances if:

    (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interests;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

1    (4)    such interest is in bona fide dispute; or

2    (5)    such entity could be compelled, in a legal or equitable proceeding, to
            accept a money satisfaction of such interest.

3

4    11 U.S.C. § 363(f).

5        Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any

6    one of its five requirements will suffice to permit the sale of the Real Property "free and clear" of

7    liens and interests. *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in

8    the disjunctive, not the conjunctive.  Therefore, if any of the five conditions of § 363(f) are met,

9    the Trustee has the authority to conduct the sale free and clear of liens."); *In re Bygaph, Inc.*, 56

10   B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Michigan Employment Sec. Comm'n v*

11   *Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991)

12   (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court

13   may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy

14   Code section 363(f) is met).

15       The Trustee believes that one or more of the tests of sections 363(f)(2), (f)(4) and (f)(5)

16   are satisfied with respect to the transfer of the Real Property pursuant to the APA.  To the extent

17   the proceeds of the sale are not sufficient to pay lienholders in full, the Trustee anticipates the

18   liens are either subject to a bona fide dispute or the lienholders will consent to the sale.

19       In particular, the Real Property can be sold free and clear of the Zion lien, the SBA lien,

20   the Zion/SBA inter-creditor agreement, and the USA forfeiture action which has been released,

21   because the Trustee believes that Zion and the SBA will each consent to the sale or Zion and the

22   SBA will be paid from the proceeds of the sale.  The Real Property can be sold free and clear of

23   the unrecorded lease between Wannas and IMG because any such interest was eliminated by the

24   substantive consolidation of Wannas into the IMG Estate.  The Real Property can be sold free and

25   clear of any lien of the City of West Sacramento because any outstanding amounts that may be

26   owed will be paid by the Buyer as part of the sale transaction, so there will be no lien amounts

27   owing.

28       If there is no consent, the Trustee submits that the Court may authorize the sale of any

-14-

assets allegedly secured by the liens of Lemke/Mar, Polycomp, the Ashleys and Nevada Security Bank due to the Trustee's dispute as to the validity of those liens. To be a bona fide dispute under section 363(f)(4), there must be an objective basis for either a factual or legal dispute as to the validity of the debt. *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991); *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995). To qualify as a bona fide dispute, the propriety of the lien does not have to be the subject of an immediate or concurrent adversary proceeding. *In re Gaylord Grain L.L.C.*, 306 B.R 624, 627-28 (B.A.P. 8th Cir. 2004).

Initially, the Lemke/Mar, Polycomp, the Ashleys and Nevada Security Bank are avoidable because they were granted in violation of Wannas' agreement with Zion. As such, the requisite corporate authority to grant such liens did not exist. Such restrictions on junior encumbrances are typical where an institutional bank is the senior secured lender, and the lack of an inter-creditor or subordination agreement was a "red flag" putting Lemke/Mar, Polycomp, the Ashleys and Nevada Security Bank on notice of the invalidity and/or potential avoidability of their liens.

Additionally, as set forth above, the Trustee disputes the Nevada Security Bank lien on the basis that that lien has been released. The Trustee also disputes the Lemke/Mar lien on the basis that Fred Lemke and Timothy Mar were "net winners" and the lien is subject to avoidance. Further, the Trustee disputes the liens of Polycomp and the Ashleys on the basis that those liens, granted in May and August 2013, respectively, when Wannakuwatte's Ponzi scheme was unraveling, are avoidable in IMG's bankruptcy case. Moreover, with respect to Ponzi scheme bankruptcy cases, the principle of ratable distribution in bankruptcy law prevails over the imposition of remedies that favor one set of Ponzi scheme victims at the expense of other victims. *See, e.g., Gardi v. Gowan (In re Dreier, LLP)*, 429 B.R. 112 (Bankr. S.D.N.Y. 2010), *aff'd*, 2010 U.S. Dist. LEXIS 96604 (S.D.N.Y. Sept. 10, 2010); *Gaffney v. Rubino (In re Builders Capital & Servs. Inc.)*, 317 B.R. 603 (Bankr. W.D.N.Y. 2004) (quoting *Golden Mortg. Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.)*, 171 B.R. 79 (B.A.P. 9th Cir. 1994)).

To the extent there are any liens, interests, claims or encumbrances that are not properly perfected, the filing of the Chapter 11 cut off the perfection rights of any such unknown claimants and gave the estate the status of a bona-fide purchaser without notice of the Unrecorded Liens.

11 U.S.C. § 544. With respect to any statutory liens that may arise under state law based on the Debtor's insolvency proceedings or otherwise, such liens are avoidable under Bankruptcy Code section 545. The Trustee is not aware of anyone asserting any Unrecorded Lien(s). Thus, a sale free and clear of the Unrecorded Lien(s) is appropriate pursuant to Bankruptcy Code section 363(f)(4).

Any lienholder also will be adequately protected by having their liens, if any, attach to the Sale Proceeds in the same order of priority, with the same validity, force, and effect that such creditor had prior to the sale, subject to any claims and defenses the Trustee and the IMG Estate may possess with respect thereto. Accordingly, section 363(f) authorizes the transfer and conveyance of the Real Property free and clear of any such claims, interests, liabilities, or liens.

Accordingly, the Trustee believes that the sale of the Real Property free and clear of liens is appropriate under Bankruptcy Code sections 363(f)(2), (4) and (5).

## C.   The Bid Procedures are Appropriate and Will Maximize the Value Received for the Estate.

Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656-657 (Bankr. S.D.N.Y. 1992); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See., e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-565 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Trustee'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.*), 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988).

To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore

are appropriate in the context of bankruptcy sales. *See, e.g., In re Montgomery Ward Holding Corp.*, Case No. 97-1409 (PJW) (Bankr. D. Del. Aug 6, 1997); *In re Fruehauf Trailer Corp.*, Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *Integrated Resources*, 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

The proposed Bidding Procedures will allow the Trustee to conduct the sale of the Real Property in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Trustee will receive the best possible consideration for the Real Property by helping ensure a competitive and fair bidding process. The proposed Bidding Procedures also allow the Trustee to undertake the sale process in as expeditious a manner as possible, which the Trustee believes is essential to maintaining and maximizing the value of the IMG Estate. The Trustee believes that the Bidding Procedures will encourage bidding for the Real Property and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See Integrated Resources*, 147 B.R. at 659; *995 Fifth Avenue Assocs.*, 96 B.R. at 28.

**D.      Relief Under Bankruptcy Rule 6004(h) Is Appropriate**

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee requests that any order approving the sale of the Real Property be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) shall not apply to any order granting this Motion.

The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period,

Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 A. Resnick & H. Sommer, eds., *Collier on Bankruptcy* ¶ 6004.11 at 6004-20 (16th ed. 2014). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.* at 6004-20 to 6004-21.

The Trustee hereby requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h) or, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

### VII.   NOTICE

The Trustee has served notice of this Motion, together with a copy of the Motion and the exhibits and declarations in support thereof, to the following parties: (i) the Office of the United States Trustee; (ii) the Debtor; (iii) counsel for the Debtor; (iv) the Debtor's pre-petition secured creditors; (v) parties holding interests in the Real Property for which the Trustee seeks authority to sell free and clear of those interests; (vi) counsel for the Official Committee of Unsecured Creditors; (vii) the Debtor's twenty largest unsecured creditors; (viii) the Internal Revenue Service, United States Attorney, California Attorney General's Office, and corresponding state agencies, as well as other governmental agencies, to the extent required by the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the Eastern District of California; and (ix) all parties who have requested special notice.

Additionally, the Trustee has served notice of this Motion on all creditors and parties in interest listed on the Court's mailing matrix for the IMG Consolidated Estate and the Wannakuwatte Consolidated Estate as well as certain other potential creditors of the IMG Consolidated Estate. While this service may result in multiple notices being received by the same individuals, the goal is to provide the greatest possible service on any possible creditor or party that asserts an interest in the Real Property to be sold free and clear of liens.

VIII.    **CONCLUSION**

WHEREFORE, the Trustee respectfully requests the Court grant the relief requested herein, and such other and further relief as the Court deems just.

Dated:  February 19, 2015

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP

By: */s/ Thomas A. Willoughby*
THOMAS A. WILLOUGHBY
Attorneys for Beverly N. McFarland
Chapter 11 Trustee