THOMAS A. WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD WILLOUGHBY &
PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
e-mail: twilloughby@ffwplaw.com

Attorneys for the Chapter 11 Trustee,
Beverly N. McFarland

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL MANUFACTURING GROUP, INC.,<br><br>Debtor. | CASE NO.: 14-25820-D-11<br><br>Chapter 11<br><br>DCN:  FWP-20<br><br>Date:         March 19, 2015<br>Time:         10:00 a.m.<br>Courtroom:  34<br>501 I Street, 6th Floor<br>Sacramento, CA |

**CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S BUSINESS ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

**TABLE OF CONTENTS**

I.    JURISDICTION ................................................................................................................1

II.   RELIEF REQUESTED .....................................................................................................1

III.  BACKGROUND ...............................................................................................................2

      The Business Assets ..........................................................................................................2

      Marketing Related to the Business Assets .......................................................................4

      The Proposed Sale .............................................................................................................4

IV.  BIDDING PROCEDURES ................................................................................................5

V.   LEGAL ARGUMENT IN SUPPORT OF SALE OF THE PROPERTIES .................6

      A.    The Sale of the Business Assets Pursuant to the APA Is Authorized by Section 363 as a Sound Exercise of the Trustee's Business Judgment ..............6

            1.    Sound Business Purpose. ................................................................................6

            2.    Fair and Reasonable Consideration. ...........................................................7

            3.    Good Faith. ......................................................................................................7

      B.    The Sale of the Business Assets Free and Clear of Liens and Other Interests Is Authorized by Section 363(f) ...............................................................7

      C.    The Bid Procedures Are Appropriate and Will Maximize the Value Received for the Estate. .........................................................................................8

      D.    Relief Under Bankruptcy Rule 6004(h) Is Appropriate .................................10

VI.  NOTICE ............................................................................................................................10

VII. CONCLUSION ................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Cello Bag Co. Inc. v Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.)*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) ...................................................................9

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*
722 F.2d 1063 (2d Cir. 1983) ..........................................................................................6

*Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*
107 F.3d 558 (8th Cir. 1997) ...........................................................................................9

*In re 995 Fifth Ave. Assocs., L.P.*
96 B.R. 24 (Bankr. S.D.N.Y. 1989) ............................................................................9, 10

*In re American Development Corp.*
95 B.R. 735 (Bankr. C.D. 1989) .......................................................................................6

*In re Bygaph, Inc.*
56 B.R. 596 (Bankr. S.D.N.Y. 1986) ................................................................................8

*In re Elliot*
94 B.R. 343 (E.D. Pa. 1988) ............................................................................................8

*In re Ewell*
958 F.2d 275 (9th Cir. 1992) ............................................................................................6

*In re Financial News Network, Inc.*
126 B.R. 152 (Bankr. S.D.N.Y. 1991) ..............................................................................9

*In re Fruehauf Trailer Corp.*
Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997) ...............................................9

*In re Montgomery Ward Holding Corp.*
Case No. 97-1409 (PJW) (Bankr. D. Del. Aug 6, 1997) ..................................................9

*In re Walters*
83 B.R. 14 (B.A.P. 9th Cir. 1988) .....................................................................................6

*Michigan Employment Sec. Comm'n v Wolverine Radio Co. (In re Wolverine Radio Co.)*
930 F.2d 1132 (6th Cir. 1991) ..........................................................................................8

*Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*
147 B.R. 650 (Bankr. S.D.N.Y. 1992) ..........................................................................8, 9

*The Official Committee of Unsecured Creditors v The LTV Corp. (In re Chateaugay Corp.)*
973 F.2d 141 (2d Cir. 1992) ............................................................................................6

**STATUTES**

11 U.S.C. §363 ............................................................................................................. 1, 6, 7, 8

11 U.S.C. §544 ....................................................................................................................... 8

11 U.S.C. §545 ....................................................................................................................... 8

28 U.S.C. §157 ....................................................................................................................... 1

**OTHER AUTHORITIES**

Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) ................................................... 10

**RULES**

Federal Rule of Bankruptcy Procedure 2002 ........................................................................ 1

Federal Rule of Bankruptcy Procedure 6004 .................................................................. 1, 10

**TREATISES**

10 A. Resnick & H. Sommer, eds., *Collier on Bankruptcy* ¶ 6004.11 (16th ed.
    2014) ............................................................................................................................. 10

Beverly N. McFarland, the duly-appointed and acting Chapter 11 Trustee (the "Trustee") of the bankruptcy estate (the "IMG Estate") of International Manufacturing Group, Inc. ("IMG" or the "Debtor"), hereby moves this Court (the "Motion") for an order approving the sale of substantially all of the assets (the "Business Assets") of the Debtor's medical, dental and tattoo supply business known as RelyAid and RelyAid Tattoo Supply (the "IMG Business") to D&T Holdings, LLC ("Buyer") free and clear of all liens, claims, encumbrances, or other interests, subject to overbidding, pursuant to section 363 of Title 11 of the United States Code (the "Bankruptcy Code"). In support of this Motion, the Trustee respectfully represents the following:

## I.    JURISDICTION

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Code section 363 and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 6004. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## II.    RELIEF REQUESTED

The Trustee requests the following of the Court:

a.    Approve the sale of the Business Assets to Buyer for $375,000, subject to overbidding and in accordance with the terms and conditions set forth in the Asset Purchase Agreement (the "APA") attached to the Exhibit Document as Exhibit A, free and clear of all liens, claims, and encumbrances.

b.    In the alternative, approve the sale of the Business Assets to the best overbid subject to the same terms and conditions negotiated with the Buyer which are approved by the Trustee and approved by the Court at the hearing on this Motion;

c.    Authorize the Trustee to pay all costs of sale, including closing costs and a broker's commission of 10%, from the Sale Proceeds for either the buyer or successful overbidder;

d.    At the beginning of hearing on the Motion, adopt the bidding procedures (the "Bidding Procedures") set forth in Section IV of this Motion;

e.    Conduct an auction in Court and approve the sale of the Business Assets to the highest and best bidder taking into account all factors, which bid is also approved by the Trustee

at the hearing on this Motion

  f. Waive any applicable state and/or federal stay of immediate enforceability of the order approving the Motion when entered; and

  g. Grant such other relief as is just and appropriate in circumstances of this case.

### III. BACKGROUND[1]

1. IMG filed a voluntary petition under chapter 11 of the Bankruptcy Code on May 30, 2014.

2. On June 25, 2014 this Court entered its order approving the Trustee's appointment as the Chapter 11 Trustee for the IMG Estate.

3. IMG is alleged to have been involved in a massive Ponzi scheme with IMG's sole shareholder and president, Deepal Wannakuwatte ("Wannakuwatte"), channeling in excess of $205 million in investor funds through the IMG "Wholesale" account alone, through more than 25 related entity bank accounts and 53 related entities over many years, and defrauding over one hundred and eighty-six victims of over $120 million in the process, primarily individuals, trusts, corporate entities, and possibly some financial institutions.  On November 13, 2014, Wannakuwatte was sentenced to twenty years in federal prison for this fraud.  McFarland Declaration ¶ 5.

4. Prior to the filing of this case, Wannakuwatte entered into a plea agreement ("Plea Agreement") with the United States Attorney's Office in which he admitted to engaging in criminal activity (wire fraud) and agreed to the filing of a Chapter 11 case for himself (*see* Wannakuwatte Case No. 14-25816-D-11) and "any businesses in which the defendant has a financial interest" as well as stipulated to the appointment of a Chapter 11 Trustee.  Plea Agreement, 3:18-21, ¶ D(6).  The Court has taken judicial notice of the plea agreement.  *See* Dkt. No. 87.

**The Business Assets**

5. The Business Assets include:

---

[1] The facts herein are drawn from the Declaration of Beverly N. McFarland ("McFarland Declaration") filed herewith and the exhibits thereto as well as the pleadings, schedules and other records filed in this case.

a.  All equipment, vehicles, fixtures, furniture, accounts receivable, and all other personal property (exclusive of bank accounts, petty cash, cash and check deposits from accounts receivables through the closing date, and funds payable to the IMG Estate under pending credit and debit card transactions), including the items listed on Exhibit A to the APA (collectively "Fixed Assets and Other Personal Property") and the $15,000 deposit with Medline Industries, Inc.;

b.  All inventories of warehouse stock, supplies and operating supplies, including the items listed on Exhibit B to the APA dated February 9, 2015 (collectively the "Inventory");

c.  All permits, licenses, authorizations, registrations, consents and approvals relating to the IMG Business (the "Permits and Licenses"), whether governmental or otherwise, including the three trademarks set forth on Exhibit C to the APA, to the extent they are assignable or transferable in connection with the Transaction;

d.  All telephone numbers, computer programs, existing licenses and websites currently used for the IMG Business; and

e.  Subject to applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court, select copies of books and records of the Debtor relating to the IMG Business as set forth in more detail in the APA.

6.  No formal appraisal has been performed on the Business Assets in connection with this proposed sale and none is anticipated because the Business Assets have been marketed extensively for at least five months (5) by Business Team, the Court approved broker, by its Western Region offices. Business Team has marketed the Business Assets through numerous industry websites and newspapers, direct calls to several industry players, and select private equity groups. Extensive due diligence packages were provided to potential purchasers along with periodic updated information on the business submitted to over thirty-two potential bidders that provided signed confidentiality agreements. In addition, Business Team and the Trustee had numerous meetings with the potential bidders. The offer from the Buyer is the best offer the Trustee has received. McFarland Declaration ¶ 8.

7. The lien of International Manufacturing Group, Inc. ("IMGF") on the Business Assets was released pursuant to the post-petition settlement reached with IMGF approved by this Court's Order dated December 19, 2014 (Dkt. No. 355). The Trustee is not aware of any other liens or encumbrances on the Business Assets. McFarland Declaration ¶ 9.

**Marketing Related to the Business Assets**

8. The Business Assets have been extensively exposed to the market as stated above. The Business Assets were listed for sale by Business Team pursuant to a Representation Agreement approved by the Court on October 1, 2014. The present offer of $375,000 made by the Buyer is the best of several verbal or written offers the Trustee has received. The value of the Business Assets have been impacted by the publicity of the Wannakuwatte Ponzi scheme surrounding the IMG business, a shutdown of the business by a secured creditor for two weeks, and the intervention of the government to the business. *Id*. ¶ 10.

**The Proposed Sale**

9. Subject to the Court's approval, the Trustee intends to sell the Business Assets to the Buyer pursuant to the APA attached as Exhibit A to the Exhibit Document filed with this Motion. The terms of the APA include the following (all capitalized terms used in the summary shall refer to the defined terms in the APA unless otherwise noted):

(a) The sale of the Business Assets to Buyer for $375,000 in accordance with the terms and conditions set forth in the APA free and clear of all liens, claims, and encumbrances.

(b) The sale of the Business Assets is to be "As is", "Where is" all cash to Seller at the Closing.

(c) The sale of the Business Assets is subject to Bankruptcy Court approval, with the Closing to occur no later than April 2, 2015.[2]

*Id*. ¶ 11.

10. The Trustee requests approval of the sale of the Business Assets free and clear of liens as well as authority to pay all costs of sale, including closing costs and a broker's

---

[2] While Section 3.1 of the APA provides for a Closing Date of no later than March 31, 2015, Buyer and the Trustee have agreed to extend the Closing deadline to April 2, 2015.

commission of 10%, from the Sale Proceeds.

## IV.     BIDDING PROCEDURES

The Trustee requests adoption of bidding procedures, summarized as follows:

(a)     the initial overbid must be at least $25,000.00 (the "Initial Overbid Increment") higher than the proposed $375,000 sales price,

(b)     any person or entity seeking to overbid must identify the bidder and any principals, owners, members, or shareholders of the bidder and evidence of the prospective buyer's source of capital, other financial ability to complete the contemplated transactions, and conform to Federal requirements if the funds are obtained offshore and/or from a foreign national who is not a United States citizen. The adequacy of the buyer and any overbidders will be determined in the sole discretion of the Trustee and her advisors;

(c)     before being permitted to bid, any overbidder must deliver to me a deposit by cashier check payable to Beverly N. McFarland, Chapter 11 Trustee for IMG, in an amount equal to the current purchase price of $375,000 and the Initial Overbid Increment, and if an overbid is successful, the deposit by the successful overbidder shall be non-refundable, and any funds bid in excess of the cashier's check provided must be wired to the Trustee's escrow account the next business day;

(d)     any overbid must be on the same terms and conditions as the Buyer's APA and any overbidder must agree to sign a purchase and APA for the purchase of the Business Assets in substantially the same form and terms as the APA at the hearing to approve the sale;

(e)     closing costs and a broker's commission of 10% to be paid from the Sale Proceeds under the APA; and

(f)     all due diligence and closing time periods contained in the APA shall apply to any overbid and any overbidder must agree to performance of such terms.

///

///

///

///

## V. LEGAL ARGUMENT IN SUPPORT OF SALE OF THE PROPERTIES

### A. The Sale of the Business Assets Pursuant to the APA Is Authorized by Section 363 as a Sound Exercise of the Trustee's Business Judgment

Section 363 of the Bankruptcy Code provides that a debtor, "[a]fter notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, such use, sale, or lease should be authorized in the sound business judgment of the debtor. *See The Official Committee of Unsecured Creditors v The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale, or lease of property outside the ordinary course of business). In that regard, a sale of assets is appropriate if the debtor or trustee demonstrates a "sound business purpose" for the sale. *See, e.g., In re American Development Corp.*, 95 B.R. 735, 739 (Bankr. C.D. 1989); *In re Walters*, 83 B.R. 14 (B.A.P. 9th Cir. 1988).

Courts have considered a number of factors in determining whether to approve a sale of assets under section 363(b) including: (1) whether a sound business reason exists for the proposed transaction; (2) whether fair and reasonable consideration is being provided; (3) whether the transaction has been proposed and negotiated in good faith; and (4) whether adequate and reasonable notice has been provided. *See, e.g., In re Ewell*, 958 F.2d 275 (9th Cir. 1992).

#### 1. Sound Business Purpose.

The proposed sale fits squarely within the parameters of the business judgment test. Here, the Trustee has demonstrated a sound business purpose for the proposed sale after managing the business for over seven (7) months, marketing the Business Assets for approximately five (5) months, and other circumstances, described above, including market conditions and the benefits of the sale at this time. The present offer of $375,000 made by the Buyer is the best offer the Trustee has received. *See* McFarland Decl. ¶ 13. The Trustee projects that the IMG Estate will receive over $300,000 from the sale of the Business Assets.

Based on the foregoing, the Trustee concludes that the proposed sale of the Business Assets to the Buyer is in the best interests of the Estate and the Trustee's negotiation of the APA is a reasonable exercise of her business judgment.

**2.     Fair and Reasonable Consideration.**

The Trustee also believes that the sale should be approved because fair and reasonable consideration is being provided. The Buyer is purchasing the Business Assets for $375,000, subject to overbidding. As explained above, the Business Assets have been extensively marketed and the sales price is a reasonable offer.

**3.     Good Faith.**

As set forth in the McFarland Declaration, the APA was negotiated in order to obtain a feasible and beneficial sale of Business Assets. The Business Assets have been listed and offered for sale to the public for over five months. The APA is the result of good faith bargaining by the Trustee and the Buyer to maximize value from the Business Assets for the Estate.

**B.     The Sale of the Business Assets Free and Clear of Liens and Other Interests Is Authorized by Section 363(f)**

The Trustee requests that the sale and transfer of the Business Assets be made free and clear of any claims or interests that may be held or asserted against the Business Assets. The Trustee submits that it is appropriate to sell the Business Assets free and clear of liens pursuant to Section 363(f) of the Bankruptcy Code, with any such liens attaching to the net sale proceeds of the Business Assets to the extent applicable. Section 363(f) of the Bankruptcy Code authorizes a debtor or trustee to sell assets free and clear of liens, claims, interest, and encumbrances if:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interests;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Business Assets "free and clear" of liens and interests. *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of § 363(f) are met, the Trustee has the authority to conduct the sale free and clear of liens."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Michigan Employment Sec. Comm'n v Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

The Trustee is not aware of any recorded liens against the Business Assets. The only recorded pre-petition lienholder with respect to the Business Assets was IMGF and IMGF has released its lien pursuant to the post-petition settlement reached with the Trustee.

To the extent there are any liens, interests, claims or encumbrances that are not properly perfected ("Unrecorded Liens"), the filing of the Chapter 11 cut off the perfection rights of any such unknown claimants and gave the estate the status of a bona-fide purchaser without notice of the Unrecorded Liens. 11 U.S.C. § 544. With respect to any statutory liens that may arise under state law based on the Debtor's insolvency proceedings or otherwise, such liens are avoidable under section 545. The Trustee is not aware of anyone asserting any Unrecorded Liens. Thus, a sale free and clear of the Unrecorded Liens is appropriate pursuant to section 363(f)(4).

Accordingly, the Trustee believes that the sale of the Business Assets free and clear of liens is appropriate under 363(f)(4).

**C.  The Bid Procedures Are Appropriate and Will Maximize the Value Received for the Estate.**

Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated*

*Resources, Inc.)*, 147 B.R. 650, 656-657 (Bankr. S.D.N.Y. 1992); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).  The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See., e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-565 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Trustee'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. Inc. v Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.*), 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988).

To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., In re Montgomery Ward Holding Corp.*, Case No. 97-1409 (PJW) (Bankr. D. Del. Aug 6, 1997); *In re Fruehauf Trailer Corp.*, Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *Integrated Resources*, 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court –imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

The proposed Bidding Procedures will allow the Trustee to conduct the sale of the Business Assets in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Trustee will receive the best possible consideration for the Business Assets by helping ensure a competitive and fair bidding process.  The proposed Bidding Procedures also allow the Trustee to undertake the sale process in as expeditious a manner as possible, which the Trustee believes is essential to maintaining and maximizing the value of its estate.  The Trustee believes that the Bidding Procedures will encourage bidding for the Business Assets and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See Integrated Resources*, 147 B.R. at 659; *995 Fifth Avenue Assocs.*,

96 B.R. at 28.

**D.    Relief Under Bankruptcy Rule 6004(h) Is Appropriate**

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee requests that any order approving the sale of the Business Assets be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) shall not apply to any order granting this Motion.

The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 A. Resnick & H. Sommer, eds., *Collier on Bankruptcy* ¶ 6004.11 at 6004-20 (16th ed. 2014). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id*. at 6004-20 to 6004-21.

The Trustee hereby requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h) or, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

**VI.    NOTICE**

The Trustee has served notice of this Motion, together with a copy of the Motion and the exhibits and declarations in support thereof, to the following parties: (i) the Office of the United States Trustee; (ii) the Debtor; (iii) counsel for the Debtor; (iv) the Debtor's pre-petition secured creditors; (v) counsel for the Official Committee of Unsecured Creditors; (vi) the Debtor's twenty largest unsecured creditors; (vii) the Internal Revenue Service, United States Attorney, California Attorney General's Office, and corresponding state agencies, as well as other governmental agencies, to the extent required by the Bankruptcy Rules and the Local Rules for the United

-10-

Motion for Order Approving
Sale of Business Assets

States Bankruptcy Court for the Eastern District of California; and (viii) all parties who have requested special notice.

Additionally, the Trustee has served notice of this Motion on all creditors and parties in interest listed on the Court's mailing matrix for the IMG Consolidated Estate and the Wannakuwatte Consolidated Estate as well as certain other potential creditors of the IMG Consolidated Estate. While this service may result in multiple notices being received by the same individuals, the goal is to provide the greatest possible service on any possible creditor or party that asserts an interest in the Business Assets to be sold free and clear of liens.

Finally, the Trustee also has served notice of the Motion via email to all potential bidders who have signed a confidentiality agreement which is on file with her.

## VII.    CONCLUSION

WHEREFORE, the Trustee respectfully requests the Court grant the relief requested herein, and such other and further relief as the Court deems just.

Dated: February 19, 2015

                      FELDERSTEIN FITZGERALD
                      WILLOUGHBY & PASCUZZI LLP


                      By: _Thomas A. Willoughby_____
                          THOMAS A. WILLOUGHBY
                          Attorneys for Beverly N. McFarland
                          Chapter 11 Trustee