THOMAS A. WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD WILLOUGHBY &
PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
e-mail: twilloughby@ffwplaw.com

Attorneys for the Chapter 11 Trustee,
Beverly N. McFarland

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>INTERNATIONAL MANUFACTURING GROUP, INC.,<br><br>Debtor. | CASE NO.: 14-25820-D-11<br><br>Chapter 11<br><br>DCN:  FWP-26<br><br>Date:         June 10, 2015<br>Time:        10:00 a.m.<br>Courtroom:   34<br>                     501 I Street, 6th Floor<br>                     Sacramento, CA |

**MOTION OF TERAOKA & PARTNERS LLP FOR FIRST INTERIM
ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES
AS SPECIAL COUNSEL FOR THE CHAPTER 11 TRUSTEE**

The law firm of Teraoka & Partners LLP ("Counsel" or "Teraoka"), special counsel for Beverly N. McFarland, the duly appointed Chapter 11 Trustee (the "Trustee") in the above-referenced case, submits this Motion ("Motion") for first interim allowance of attorneys' fees in the amount of $17,767.50 and reimbursement of expenses in the amount of $133.28 for a total of $17,900.78 for the period of September 23, 2014, through and including April 21, 2015 ("Motion Period").

## I.

## BACKGROUND FACTS

On May 30, 2014, International Manufacturing Group, Inc. (IMG" or the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On June 25, 2014, this

1  Court entered its order approving the Trustee's appointment as the Chapter 11 Trustee for the
2  Debtor's estate pursuant to the request of the United States Trustee filed on June 24, 2014.

3  Prior to the sale of substantially all of the Debtor's business assets, the Debtor was
4  primarily engaged in the retail sale and distribution of consumable or disposable medical supplies
5  for dentists and for tattoo artists ("IMG Business"). The Debtor operated its business out of a
6  warehouse and manufacturing facility in West Sacramento, California.

7  IMG is alleged to have been involved in a massive Ponzi scheme with IMG's sole
8  shareholder and president, Deepal Wannakuwatte ("Wannakuwatte"), channeling in excess of
9  $205 million in investor funds through the IMG "Wholesale" account alone, through more than
10 25 related entity bank accounts and 53 related entities over many years, and defrauding over 186
11 victims of over $120 million in the process, primarily individuals, trusts, corporate entities, and
12 possibly some financial institutions. On November 13, 2014, Wannakuwatte was sentenced to
13 twenty years in federal prison for this fraud.

14 On October 14, 2014, this Court entered its order approving the employment of Counsel
15 as special labor law counsel for the Trustee effective as of September 23, 2014 (the "Employment
16 Order").

17 **II.**

18 **CASE STATUS**

19 At the inception of this case, there was an almost crippled business and business records
20 relating to a massive Ponzi scheme in complete disarray. Documents detailing how the Ponzi
21 scheme had occurred were strewn about haphazardly in trunks of automobiles, garages, the FBI's
22 offices, and boxes stacked on pallets in the business warehouse.

23 With the help of counsel, her staff, and her other professionals, the Trustee conceived of
24 and implemented the following strategy to maximize the return to the victims: (1) investigate
25 claims against third parties; (2) assist the investigation by operating the business and then selling
26 it as a going concern; (3) evaluate and, if appropriate, consolidate the far-flung entities used in the
27 Ponzi scheme to maximize recoveries of assets and claims against third parties; (4) hire
28 sophisticated plaintiff-side counsel to bring valid claims against third parties for the benefit of the

victims of this horrendous Ponzi scheme; and (5) confirm a plan that pools the claims of both the consolidated individual case and the IMG consolidated case for ultimate efficient distribution to creditors.

The first three phases—investigation, operation/sale of business assets, and consolidation—have largely been completed. Litigation counsel has commenced significant claims against third parties, and an agreement also has been reached and approved by the Court respecting the future establishment of a joint claims pool in the consolidated IMG case and the consolidated individual cases.

As the Court is aware, and as described in the cash collateral motion filed herewith, sufficient cash (approximately $1.4 million) exists from the IMGF settlement, the proposed MAR settlement filed herewith, and the sale of the IMG Business to pay essentially all current administrative claims. However, the consequence of immediate payment of all accrued administrative fees would be an increase in the contingency fee amount from 33% to 40% if no funds would remain and litigation counsel must advance costs.

The Trustee has requested that the estate's professionals, including counsel for the Official Committee of Unsecured Creditors (the "Committee"), defer immediate payment of their professional fees and costs incurred in the first ten months of this case so the Trustee can reserve $350,000 to pay litigation expenses on a monthly ongoing basis for the next year. The professionals have agreed to seek interim approval for 100% of their fees and costs, but request immediate interim payment of only 70% of their fees and 100% of their costs at this stage of the case.

## III.

## SERVICES RENDERED

Pursuant to the Employment Order Counsel was employed to provide labor and employment law advice to the Trustee concerning employment law obligations and policies with respect to IMG, issues related to the sale of the IMG business; and regarding the IMG 401k plan. Because the services provided by Counsel were limited in scope they were not task billed. The services provided by Counsel to the Trustee include but were not limited to the following:

1. Participating in initial telephone conferences with the Trustee to obtain case background information and identify near-term employment-related projects, such as preparation of employment agreements and confidentiality agreements for all employees;

2. Providing advice to the Trustee on numerous employee issues including but not limited to an employee's request for a reduction of hours; adoption of an interim paid Holiday Schedule; and an ex-employee's post termination communications with current employees;

3. Traveling to/from San Jose to the IMG office in West Sacramento to attend a meeting with the Trustee regarding employee background issues and strategies and to review and evaluate employee personnel files for content and legal compliance;

4. Drafting a Confidential Information Agreement;

5. Reviewing and revising employment agreements for two non-exempt employees;

6. Drafting At-Will Employment Agreements for all exempt and non-exempt employees;

7. Drafting termination documents for an senior member of management team who refused to accept the Trustee's new employment terms and conditions;

8. Drafting amended At-Will Employment Agreements for two warehouse-tattoo division employees;

9. Advising Trustee on strategy for handling a Worker's Compensation claim of an IMG employee, including reviewing a Kaiser Industrial Work Status Report received by the Trustee and participating in telephone conferences with the Trustee regarding advice on near-term legal obligations in handling employee's leave of absence due to the job-related injury;

10. Performing legal research regarding Labor Code Section 4658.1 regarding employee obligations to develop a strategy for the Trustee's response to an employee's Worker's Compensation leave of absence request;

11. Drafting the Trustee's response to the employee's Worker's Compensation leave of absence request;

12. Reviewing e-mail communications between the Trustee and the Trustee's team and providing advice regarding the return to work of the employee who was on a Worker's

Compensation leave of absence;

13. Reviewing and updating the employment agreement of an employee who was returning from a leave of absence and advising the Trustee regarding same;

14. Drafting employee termination documents upon the sale of business and researching the Cal-Cobra and ACA impact on same;

15. Preparing termination packages for employees upon sale;

16. Advising the Trustee on issues relating to the potential buyer's hiring practices and performing legal research regarding the use of an applicant's social media accounts for hiring;

17. Reviewing the new Worker's Compensation Appeal Board claim by the current employee who was previously out on a job-related leave of absence;

18. Revising the termination letter to employees to include termination of group health plan; and

19. Reviewing correspondence received from IMG's worker's compensation insurer requesting employee information and drafting e-mail to the Trustee regarding instructions for same.

## IV.

## STATEMENT OF FEES AND EXPENSES

Detailed statements itemizing services rendered and expenses incurred by Counsel are attached as Exhibit A to the Declaration of Thomas M. Gosselin in Support of Motion for First and Final Allowance of Attorneys' Fees and for Reimbursement of Expenses filed and served herewith (the "Gosselin Declaration"). Exhibit A to the Gosselin Declaration reflects a total of $17,767.50 for fees and $133.28 for expenses for a total of $17,900.78 incurred during the period covered by this Motion.

A breakdown of the professionals who billed time and the number of hours billed by each is as follows:

| Professional | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Thomas M. Gosselin | $450 | 39.49 | $17,767.50 |

1  Expenses. The expenses incurred during the period covered by this Motion are as follows:

| Category | Total |
|---|---|
| Mileage | $133.28 |

Counsel requests an order under Bankruptcy Code Section 330 approving fees in this case of $17,767.50 and expenses of $133.28 for the period of September 23, 2014, through and including April 21, 2015, as fair, reasonable, and necessary to the estate.

## VII.

## FACTORS TO CONSIDER

The Employment Order approved Counsel's employment on a compensation basis that would allow payment for services rendered on an hourly rate consistent with the 9th Circuit Decision in *In re Manoa Fin. Co.,* 853 F2d 687 (9th Cir. 1988), after notice to all interested parties. Consistent with the *Manoa* Decision, various factors were suggested by the Court in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) for consideration in awarding compensation in a bankruptcy case. Though not specifically required for approval under the lodestar or *Manoa Fin. Co.* case, several of the *Johnson* factors have been specifically codified by the Bankruptcy Reform Act of 1994 and as such, these factors are discussed below:

**(a)** **Time and labor required (11 U.S.C. § 330(a)(3)(A))**: Counsel has utilized one attorney who has expended 39.49 hours during this seven-month period.

**(b)** **Novelty and difficulty of the questions (11 U.S.C. § 330(a)(3)(D))**: This case involves many of the technical and complex labor law issues that often arise in a bankruptcy case. Counsel requests that the Court take judicial notice of all the papers on file in this case that detail the types of issues faced and resolved by Counsel to date.

**(c)** **Skill requisite to perform the services properly (11 U.S.C. § 330(a)(3)(D))**: Counsel is skilled in handling complex labor law issues and has special knowledge which enables Counsel to render services of benefit to the estate. Mr. Gosselin has many years of experience in similarly complicated cases.

**(d)** **Customary fees (11 U.S.C. §§ 330(a)(3)(B and E))**: The rates charged by Counsel are Counsel's standard billing rates, which standard rates are the same rates as generally

used by Counsel with respect to its non-debtor/trustee clients.  The rates also are similar to the normal charges for similar work performed by similarly experienced and skilled attorneys and legal assistants in the Eastern District of California bankruptcy courts.  Counsel requests that the Court take judicial notice of the rates generally charged and approved in fee applications before this Court and other cases in the Eastern District of California.

**(e)   Amount of work involved and result obtained (11 U.S.C. § 330(a)(3)(D))**:  As stated above, Counsel has expended 39.49 hours on behalf of the Trustee during the period covered by this Motion performing the services described herein.

**(f)   Experience, reputation, and ability of counsel**:  Counsel has many years' experience handling complex labor law issues cases.  Counsel also enjoys a reputation for quality work and integrity in the legal community and before this Court.

**(g)   Professional relationship with the client**:  Other than as disclosed in its application for approval of employment of counsel, Counsel has no relationship with the U.S. Trustee, the Debtor, its officers and directors, or its creditors.

**(h)   Awards in similar cases (11 U.S.C. § 330(a)(3)(F))**:  The compensation sought by this Motion is consistent with that authorized in similar cases.

In addition to the foregoing *Johnson* factors, section 330 also examines whether the services were:

**(i)   Necessary to the Administration of the Bankruptcy Case (11 U.S.C. § 330(a)(3)(C))**:  All of Counsel's services have been required and have benefited the estate.  Counsel's services were necessary to the administration of this case.

## VIII.
## PAYMENTS RECEIVED TO DATE

With respect to the Bankruptcy Rule 2016(a) requirements for attorney fee applications, Counsel has not received any payments to date in this case from any source

## IX.
## SUMMARY OF PRIOR FEE MOTIONS

This is Counsel's first Interim fee motion so no previous Motions have been filed.

## X.

## U.S. TRUSTEE GUIDELINE 2.2.2

During the preparation and finalization of this Application, the Trustee has been out of the office and unavailable to review the final billing statements and Application. Prior to the hearing on this Application, a statement shall be filed detailing the Trustee's position on this Application and the proposed billings, which will indicate any objections the Trustee may have to the relief requested herein.

## XI.

## CONCLUSION

Based on all of the above, the Trustee respectfully request this Court to enter its order approving on an interim basis the compensation sought and reimbursement of expenses requested as fair, reasonable, and necessary to the estate, and entering an order specifically providing as follows:

1. Approving on an interim basis attorneys' fees in the sum of $17,767.50 and expenses in the sum of $133.28 for a total of $17,900.78, incurred by Teraoka & Partners LLP during the period extending from September 23, 2014, through and including April 21, 2015, as fair, reasonable, and necessary to the estate;

2. Authorizing the Trustee to pay Teraoka & Partners LLP 100% of the interim approved expenses ($133.28 and 70% of the total interim approved fees ($12,437.25) for a total interim payment of $12,570.53 out of available cash in the estate; and

3. For such other and further relief as the Court deems just.

Dated:  May 13, 2015

                                              FELDERSTEIN FITZGERALD
                                              WILLOUGHBY & PASCUZZI LLP

                                              By:*/s/ Thomas A. Willoughby*
                                                  THOMAS A. WILLOUGHBY
                                                  Attorneys for Beverly N. McFarland,
                                                  Chapter 11 Trustee